

# Missouri Court of Appeals

### Southern District

In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD37158 |
| | ) | |
| v. | ) | **Filed: January 20, 2023** |
| | ) | |
| AUSTIN TYLER GRAY, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Becky J. W. Borthwick, Judge

**AFFIRMED**

Austin Tyler Gray ("Gray") appeals his convictions of statutory rape in the first degree, enticement of a child, and child molestation in the second degree, following a jury trial. In a single point, Gray argues the trial court abused its discretion in admitting statements made by a detective about the credibility of the minor victim ("Child") during Gray's interrogation. According to Gray, these statements on Child's credibility were improper expert witness opinion evidence that invaded the province of the jury. Finding no merit in Gray's point, we affirm.

## Background and Procedural History

When Child was around eight or nine years old, she lived in an apartment with her mother ("Mother") and Mother's boyfriend, Gray. One evening, while Mother was at work, Child was in Mother's bedroom playing a videogame with Gray. Gray told her to take off her

nightgown and get on the bed. Child removed her clothing. Gray removed his pants and touched Child's "down-there area" and her chest with his hands. Then, Gray put his "down-there" inside of Child's "down-there[,]" which lasted for several minutes. Both before the incident and after, Gray told Child he would give her some candy as long as she did not tell anyone about the incident. Several months later, a family friend asked Child if anything had happened between Child and Gray. Since Gray was now "out of the picture," Child told the family friend about the incident and then told Mother. Mother called the police and took Child to the Child Advocacy Center ("CAC"), where Child was interviewed by a forensic interviewer.

Detective Thomas Hicks ("Detective Hicks") was the primary investigator on the case and interrogated Gray as a part of his investigation. Detective Hicks worked in the child victim's unit. He had attended interrogation training, and a program about investigative techniques for internet crimes against children, as well as classes and seminars related to child-victim crimes. Detective Hicks testified he was trained in the Wicklander-Zulawski method of interrogation, which involves minimizing the crime in order to put a suspect at ease. Detective Hicks used that technique in his interrogation of Gray.

The interrogation was recorded and played for the jury at trial over Gray's objections.[1] During the recorded interrogation, Gray acknowledged he was aware he was being accused of molesting Child. Detective Hicks explained Child went to the CAC where she made a disclosure. Detective Hicks explained the purpose of the CAC interview was to avoid coaching, adding that "it becomes pretty obvious quickly when a child is coached." Detective Hicks told Gray, "there was never any point there where [Child] had been told what to say or anything like that" and that when a child is coached, they do not provide "sensory details," like the location of furniture, as Child had done.

---

[1] At a pre-trial hearing, Gray objected to the State's use of Detective Hicks' statement from the recorded interrogation, "I believe [Child] is telling the truth."

2

Gray responded by stating he had been playing with Child at some point and noticed her fingers smelled like "vagina." This made Gray believe Child had been masturbating. Gray said Child would try to kiss him at times and would frequently change clothes in front of him. Gray also mentioned Child was attracted to him and that other people had warned him about Child's "infatuation" with him.

Detective Hicks asked Gray whether he ever had any blackouts due to his drug use. Gray said there were times he "would forget about a whole week" but it had been getting better since he stopped consuming methamphetamine. Detective Hicks then asked Gray if this could have been a situation where Gray was incapacitated and had confused Child for Mother, or where Child took advantage of him. Gray answered by saying he wasn't sure but he did not recall it happening. Detective Hicks then said, "I don't think [Child] is lying or anything like this but I think it may be a situation of it may just be difficult for you to kind of remember what exactly happened."

Detective Hicks stated he thought "what [Child] is saying is the truth," but suggested again that perhaps Gray did not remember because he had been incapacitated by his drug use. Detective Hicks added, "I think it did happen" because of the amount of details Child provided, including the color of the bed sheets. Detective Hicks remarked that due to the amount of details provided, he had "no doubt that [Child's] telling the truth[,]" and "this did happen," to which Gray replied that if it did, he would want to apologize to Child and explain to her that it must have been due to his drug use.

Detective Hicks told Gray on the video the reasons why he believed Child was telling the truth and asked if Gray believed Child was lying. Gray said he agreed he would not say Child is lying but would not "swear on anything." Gray said he did not know if it happened, but if it happened, he was "not going to feel good about it." Gray added, "it might have been like what

3

you said" and that he might be able to recall it later on. Gray said he did not believe Child would make up the allegations because she was mad at him, since he and Child were "very close."

At trial, Gray testified in his own defense, stating Child had been stealing from stores and from kids at school and was not listening at home, which had created conflict between him and Child. Gray denied he had asked Child to take off her clothes, had sex with her, or touched her breasts with his hands. Gray acknowledged that in the interrogation, he said he had seen Child naked when she walked around the house, that Child was attracted to him, and had tried to kiss him. He also acknowledged there were times he would consume drugs and not recall what happened, but he could recall the instances he had sex with Mother when he was on drugs, so he believed he would recall if he had sex with Child.

The jury found Gray guilty of three sex offenses involving Child, and Gray was sentenced to 20 years in prison. Gray appeals from that judgment in a single point.

Gray's sole point challenges the trial court's admission of Detective Hicks' statements in the recorded interrogation of Gray where he stated Child was not lying. According to Gray, these statements were inadmissible expert opinion testimony on the credibility of a witness.

### Standard of Review

The trial court "has broad discretion to admit or exclude evidence during a criminal trial" and error occurs only when the trial court clearly abuses this discretion. *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020) (quoting *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016)). The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016). Gray bears the burden of overcoming the presumption that a discretionary ruling is correct. *State v. Christianson*, 642 S.W.3d 793, 798 (Mo. App. S.D. 2022).

4

## Analysis

While the trial court enjoys broad discretion to admit or exclude witness testimony, it generally does not have discretion to admit expert witness testimony regarding the credibility of witnesses. *State v. McWilliams*, 564 S.W.3d 618, 623-24 (Mo. App. W.D. 2018); *State v. Suttles*, 581 S.W.3d 137, 148 (Mo. App. E.D. 2019). This is because expert opinion testimony should never be admitted unless it is clear that the jurors are not capable, for lack of experience or knowledge, to draw conclusions from the facts proved. *Suttles*, 581 S.W.3d at 148. Since the jury, as the arbiter of facts, is able to draw conclusions from the facts on whether a witness is or is not credible, opinion testimony regarding a witness's credibility is usually inadmissible. *State v. Ferguson*, 568 S.W.3d 533, 541 (Mo. App. E.D. 2019). Thus, a witness may not testify about a specific victim's credibility. *State v. Churchill*, 98 S.W.3d 536, 539 (Mo. banc 2003).

However, Missouri case law distinguishes between expert witness testimony regarding a victim's credibility and testimony by officers describing statements they made to a suspect during an interrogation. *See* e.g., *State v. O'Brien*, 857 S.W.2d 212, 221 (Mo. banc 1993); *State v. Kluck*, 968 S.W.2d 206, 208 (Mo. App. S.D. 1998); *State v. Jones*, 398 S.W.3d 518, 525 (Mo. App. E.D. 2013). While the former category is inadmissible, the latter is generally admissible so long as those statements are offered to provide context to a defendant's answers rather than to prove the truth of the officer's statements. *See Jones*, 398 S.W.3d at 525.

In *O'Brien*, for example, the Supreme Court of Missouri held that the trial court did not abuse its discretion in admitting testimony from an officer that, during the interrogation of the defendant, the officer told the defendant he was lying, since "[t]he witness was not telling the jury that, in his opinion, the defendant is a liar" but was merely "describing the give-and-take of his interrogation[.]" 857 S.W.2d at 221. Likewise, our Court, in *Kluck*, determined there was no abuse of discretion where the trial court admitted testimony by a detective where, during an

5

interrogation of the defendant, the detective repeatedly told the defendant he did not believe him, which prompted the defendant to eventually admit to shooting the victim. 968 S.W.2d at 208. Because the detective was not telling the jury that, in his opinion, the defendant was lying but was instead recounting the "give-and-take" of the interview, the trial court did not abuse its discretion in allowing the testimony. *Id.*

*Jones* also concerned the question of whether the trial court abused its discretion in admitting an officer's statements about credibility that were made during an interrogation. 398 S.W.3d at 524. During the interrogation, the officer made comments that he did not believe the suspect had acted in self-defense because his reported wounds had healed so quickly and because people who act in self-defense usually file police reports, which the defendant had not done. *Id.* The eastern district of our Court found no abuse of discretion in admitting the officer's statements, finding the officer's "statements were offered at trial to provide context to [the defendant's] answers during the interrogation. [The defendant's] statements during the interrogation were made in response to specific questions by [the officer], and the text of those questions was therefore helpful to understand the full context of [the defendant's] answers." *Id.* at 526.

While Gray points us to several cases that found an abuse of discretion where an expert witness testified about a child-victim's credibility, none of these cases involved statements about credibility made in the context of an interrogation of a suspect.[2] Instead, they are cases where doctors or counselors offered in-court testimony on the credibility of the child-victim—an issue the jury was equally capable of deciding.

Here, there was no *testimony* to the jury by Detective Hicks regarding Child's credibility, and the State never sought to qualify him as an expert. His testimony at trial was limited to that

---

[2] These cases are: *State v. Williams*, 858 S.W.2d 796, 800 (Mo. App. E.D. 1993), *State v. Foster*, 244 S.W.3d 800, 802 (Mo. App. S.D. 2008), *Churchill*, 98 S.W.3d at 536, *State v. Rogers*, 529 S.W.3d 906 (Mo. App. E.D. 2017), *McWilliams*, 564 S.W.3d at 618, *Ferguson*, 568 S.W.3d at 533.

of a fact witness, which included his job title, job history, and training.[3]  At no point did he tell the jury he had any special skills, experience, education, or training that qualified him to assess Child's credibility.  Nor did he tell the jury he believed Child was telling the truth.  His only statements about Child's credibility were those statements he made during the interrogation.  And those statements were offered only to provide context to Gray's responses in the interrogation and are crucial to understanding Gray's responses.  Without these statements, it is difficult to understand why Gray would state that he sometimes experienced blackouts, that Child was attracted to him, and that if the event did happen, he would want to explain to Child why it happened.  Detective Hicks' statements about Child's credibility also provide necessary context to Gray's own statements about Child's credibility (e.g., Gray's statement that he "wouldn't say [Child] is lying" and that he did not believe Child would make up the allegations because he and Child were "very close").  Nor is there a strong risk these statements would carry the same scientific cache that an expert witness' testimony does.  The jury viewed the recorded interrogation and was informed it was just that—a recorded interrogation.  Detective Hicks testified he was trained to use minimization and deception to elicit confessions from suspects.  Given that Detective Hicks' statements about Child's credibility were made during an interrogation, a process where deception is sometimes employed to elicit confessions, there was a low risk that Detective Hicks' statements would be interpreted by a jury as an expert opinion.  If anything, these statements were just as likely to have the opposite effect—that Detective Hicks made the statements not because he thought Child was, in fact, telling the truth, but because he was trying to apply psychological pressure on Gray to elicit a confession.

---

[3] Gray did not object to this testimony at trial and acknowledged at oral argument that such testimony was admissible.

Detective Hicks' statements occurred in the context of a give-and-take conversation with Gray during an interrogation and were admitted solely for that purpose.  The trial court did not abuse its discretion in admitting those statements.  Gray's point is denied.

**Conclusion**

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS